NO. 07-09-00331-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 27, 2011

HAROLD "BUD" ERIC HAM, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 100TH DISTRICT COURT OF HALL COUNTY;

NO. 3477; HONORABLE STUART MESSER, JUDGE

Before CAMPBELL and HANCOCK, JJ. and BOYD, S.J.[1]

**OPINION**

A Hall County jury convicted appellant Harold "Bud" Eric Ham of murder and sentenced him to ninety-nine years' confinement in prison. On appeal, he argues the court reporter did not record or did not transcribe the parties' challenges for cause at voir dire and the sentence imposed is unconstitutionally disproportionate to the offense. We will affirm.

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Background

Appellant does not challenge the sufficiency of the evidence so we describe only so much of the factual background as necessary for discussion of the issues raised. Testimony showed that during the evening of August 15, 2008, Darrell Randell, Larry Dozier, Joe Mark Davis and appellant were socializing and drinking beer outside Davis's residence in Turkey, Texas. Appellant began drinking during the afternoon and he and Davis spent several hours at a bar. By all accounts, appellant was highly intoxicated.

Randell decided to leave the gathering and walked toward his bicycle. Testimony showed that as Randell sat on the bicycle, appellant shot him with a .22 caliber handgun. Randell stepped away from the bicycle asking, "What's going on?" Appellant shot him a second time. Randell said to Davis, "I'm hit. I don't think I'm going to make it." Dozier then saw appellant "raise his gun and point it at [Randell] and shoot him." Randell apparently died before EMS personnel arrived. According to the medical examiner, the cause of death was three gunshot wounds to the head.

Appellant made statements at the scene after the shooting. He said to Davis he "took care of the problem."[2] He told a chief deputy sheriff that he shot Randell "out of anger" as he "was trying to steal beer out of my ice chest." When the chief deputy arrived at the scene, he noted appellant seemed to be crying and was "upset, distraught, emotional." Appellant also testified at trial, saying the first two shots were accidental and he had no recollection of the third. Concerning appellant's reputation

_____

[2] Davis testified that, earlier in the evening, appellant had asked Davis to make Randell leave. Davis said he told appellant he would send Randell home if he "causes anything."

and character, the chief deputy indicated he had not had "any ill dealings with him as law enforcement." Dozier testified that until the third shot he thought the shooting was a prank because he "never would think [appellant] would do anything like that."

Analysis

Appellant presents three issues. The first and second arise from the same complaint, that the court reporter either did not record or did not transcribe the parties' challenges for cause at voir dire.

Appellant's counsel on appeal, who was not counsel at trial, noticed while reviewing the record that the reporter's transcription of voir dire includes no challenges for cause of members of the venire. Yet, by appellant's reckoning, the record "makes obvious" that some panel members were "no longer present" at a later point during the voir dire. Appellant points to a comment his trial counsel made to one panel member, "[a]bout cleaned out the rest of your row, didn't we?" and, according to appellant, the sequence of names his trial counsel called while questioning the panel at that point during voir dire indicates some panel members were "gone."

At the outset we note we do not share appellant's certainty that the record shows panel members were excused or dismissed for cause. We do not agree that counsel's failure to direct a question to a particular panel member during voir dire demonstrates that member is "gone." Counsel may well simply have skipped that member, intentionally or inadvertently. Nevertheless, we recognize the questions that the record raises for appellant's appellate counsel, and will, for purposes of our analysis, assume

3

he is correct that the appellate record as filed omits the dismissal of one or more panel members for cause.

By his first issue, appellant asserts he will be denied due process of law if the case is not remanded to the trial court for the correction of an inaccuracy in the record pursuant to the procedure of appellate rule 34.6(e)(3).[3]  The issue does not assert the trial court erred; rather, appellant asks us to compel a hearing by the trial court.  We will overrule the issue, for two reasons.

First, appellant had other procedural avenues available to address the issue he perceives.  Because he believes the reporter's record does not include all the in-court

---

[3]  Rule of Appellate Procedure 34.6 provides in pertinent part:

(e) *Inaccuracies in the Reporter's Record.*

(1)  *Correction of Inaccuracies by Agreement.*--The parties may agree to correct an inaccuracy in the reporter's record, including an exhibit, without the court reporter's recertification.

(2)  *Correction of Inaccuracies by Trial Court.*--If the parties cannot agree on whether or how to correct the reporter's record so that the text accurately discloses what occurred in the trial court and the exhibits are accurate, the trial court must - after notice and hearing - settle the dispute. If the court finds any inaccuracy, it must order the court reporter to conform the reporter's record (including text and any exhibits) to what occurred in the trial court, and to file certified corrections in the appellate court.

(3) *Correction After Filing in Appellate Court.*--If the dispute arises after the reporter's record has been filed in the appellate court, that court may submit the dispute to the trial court for resolution. The trial court must then proceed as under subparagraph (e)(2).

Tex. R. App. P. 34.6(e).

4

proceedings, appellant's brief characterizes the record as "incomplete and therefore inaccurate."[4] Again for purposes of discussion, we will assume the correctness of that characterization. One of the possibilities appellant mentions in his brief is that "recordings of the voir dire exist and could be transcribed." He argues he has had no chance to question the court reporter under oath. The argument ignores the provisions of paragraph (d) of appellate rule 34.6, which permits any party to direct the court reporter to prepare a supplemental record containing any item omitted from the reporter's record. Tex. R. App. P. 34.6(d). If the reporter has recordings of the dismissal of venire members from which a record could be prepared, appellant had the capacity to cause its preparation and filing, under rule 34.6(d). Counsel conceded at oral argument that he did not request supplementation of the reporter's record.

Appellant's argument also inadequately addresses the potential that the inaccuracy he perceives in the record could be corrected by agreement, as authorized by appellate rule 34.6(e)(1). Tex. R. App. P. 34.6(e). In May 2011, before briefs were filed in this appeal, appellant filed with this court a motion asking that we intervene at that time in his effort to clarify the reporter's record. In the motion, appellant requested that we either order a new trial[5] or order the court reporter to make a declaration concerning the record. We denied the motion. His brief on appeal simply asserts that

---

[4] Appellant's request for preparation of the reporter's record designated that it contain, among other items, "all proceedings at the guilt phase and sentencing phase of trial." *See* Tex. R. App. P. 34.6(b)(1) (request for preparation of record).

[5] In support of the request for a new trial, appellant there analogized to provisions of appellate rule 34.6(f), under which an appellant is entitled to a new trial under certain circumstances if a significant portion of the record is lost or destroyed. Tex. R. App. P. 34.6(f).

the State's response to his May 2011 motion, in which the State opposed the relief sought, "makes clear the impossibility of agreement between the parties." We do not agree. We have nothing before us showing that appellant has sought agreement with the State to correct the inaccuracy he perceives. *See* Tex. R. App. P. 34.6(e)(2) (providing for action by court if "parties cannot agree on whether or how to correct the reporter's record").

Second, we agree with the State that error preservation requirements are fatal to appellant's contention on direct appeal. Appellant's contention runs afoul of error preservation requirements on two levels. First, on a procedural level, if appellant is correct that the court reporter failed to record challenges for cause or other events leading to the dismissal of a member of the venire, and if appellant desired them to be recorded, it was for him to raise a complaint with the trial court.[6] *See Valle v. State,* 109 S.W.3d 500, 508-09 (Tex.Crim.App. 2003) (holding party must object in trial court to preserve appellate complaint about failure to record bench conferences); *cf. Davis v. State,* 345 S.W.3d 71, 77 n.22 (Tex.Crim.App. 2011) (quoting George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 43.302 (2d ed. 2001), at 576 ("a party should not be permitted to ignore at the time a court reporter's dereliction of duty and later rely on that dereliction to challenge a conviction")). The appellate

---

[6] Appellant's brief suggests it was the policy of the trial judge to conduct challenges for cause off the record unless they were contested. Whether a court reporter's violation of the requirement of appellate rule 13.1(a) to make a "full record of the proceedings" absent agreement of the parties otherwise, Tex. R. App. P. 13.1(a), is a decision of the court reporter or of the trial judge is irrelevant to the matter of error preservation.

record contains no objection presented to the trial court complaining of any matter related to the court reporter or the taking of the record.[7]

Second, with regard to the substance of appellant's complaint, his brief makes clear that the substantive error he speculates might be revealed if there were a record of challenges for cause is that such challenges were made by the State, objected to by appellant and erroneously granted by the trial court. Appellant candidly acknowledges that nothing in the appellate record shows whether any member who was dismissed from the venire was dismissed at the behest of the State or of appellant. Improper dismissal for cause requires objection. *See Butler v. State,* 872 S.W.2d 227, 233-34 (Tex.Crim.App. 1994) (defendant's failure to object waived any alleged error by trial court in granting State's challenge for cause); *Catalan v. State,* 05-97-1323-CR, 1999 Tex. App. Lexis 7053, at *1-3 (Tex.App.--Dallas Sept. 17, 1999, no pet.) (not designated for publication) (also holding objection required). It goes without saying that the appellate record contains no trial objection or complaint that a challenged panel member was improperly dismissed. This is particularly significant in light of two events

---

[7] The record does not contain the request of appellant for the court reporter to transcribe voir dire or bench conferences. Whether such a request is required is a matter unnecessary to our decision. Appellate rule 13.1 requires a court reporter, unless excused by agreement of the parties, to "attend court sessions and make a full record of the proceedings." Tex. R. App. P. 13.1(a). Under that rule, a court reporter's obligation to make a full record does not depend on a request of a party. Conversely, Government Code § 52.046(a) states that "[o]n request," a court reporter shall attend all court sessions and transcribe the testimony. Tex. Gov't Code Ann. § 52.046(a)(1), (2) (West 2005). Some courts have said § 52.046(a) controls over appellate rule 13.1 because a rule must give way to a statute when the two conflict. *See, e.g., Garza v. State,* 212 S.W.3d 503, 505 (Tex.App.--Austin 2006, no pet.) (citing cases). Resolution of this apparent tension between rule and statute is unnecessary here because, as *Valle* makes clear, 109 S.W.3d at 508, either way appellant was obligated to object to the claimed failure of the court reporter to transcribe a portion of voir dire.

7

shown by the record. As noted, appellant's contention before us is based largely on the comment of his trial counsel to a panel member regarding the "cleaning out" of her row. Appellant's experienced trial counsel thus clearly was aware of the reasons for the absence of venire members.

But more importantly, after peremptory strikes were exercised and the list of jurors prepared, the trial court inquired whether counsel had opportunity to examine the list of those to serve on the jury and had objection. Appellant's counsel told the court he had no objection. By affirmatively representing to the trial court he had no objection to the composition of the jury as seated, appellant waived any claim the court erred by its ruling on a challenge for cause; moreover, the representation negated any potential harm flowing from an erroneous grant of a State's challenge for cause. *See Dixon v. State,* 14-05-0131-CR, 2006 Tex App. Lexis 7953, at *15-18 (Tex.App.--Houston [14th Dist.] 2006, no pet.) (mem. op., not designated for publication) (by stating "no objection" to court's query about jury's composition, defendant waived any claim of error from denial of challenge for cause and negated any resulting harm (citing *Canales v. State,* No. 05-94-01741-CR, 1996 Tex. App. Lexis 4268, at *10-11 (Tex.App.--Dallas Sept. 17, 1996, no pet.) (not designated for publication) and *Franklin v. State,* No. 01-87-00097-CR, 1988 Tex. App. Lexis 3139, at *4-5 (Tex.App.--Houston [1st Dist.] Dec. 22, 1988, no pet.) (not designated for publication))); *cf. Acosta v. State,* 522 S.W.2d 528, 529, 530 (Tex.Crim.App. 1975) (no error in denying motion for mistrial for juror erroneously seated when defendant responded "no objection" when court inquired about jury composition). Not only has appellant not preserved for our review the error he perceives might have occurred, he affirmatively waived any objection to the makeup of

the jury.  Due process does not require that we remand for the trial court to attempt to supplement the record with a matter not subject to our review.

Appellant's first issue is overruled.

In his second issue, appellant argues he is constructively denied effective assistance of appellate counsel by a policy of the trial court excusing the court reporter from transcribing certain portions of the trial.  This, he contends, prevents his counsel from searching the record for potential appellate issues and amounts to state interference, authorizing a presumption of prejudice.  *See Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) (discussing circumstances in which prejudice element of test for ineffective assistance is presumed).  Whether or not this type of claim might authorize a presumption of prejudice we need not say.  To establish such a claim it was for appellant to bring forward a sufficient record.  *Guajardo v. State,* 109 S.W.3d 456, 462 n.17 (Tex.Crim.App. 2003) ("It is, however, the appealing party's burden to ensure that the record on appeal is sufficient to resolve the issue he presents").  But the record does not show the trial court applied a policy excusing the court reporter from transcribing challenges for cause during voir dire.[8]

---

[8] Appellant would have us look to an outside-the-record exhibit consisting of printed e-mails from the court reporter attached to his May 2011 motion in this court. We are unable to consider documents outside the appellate record.  "An appellate court may not consider factual assertions that are outside the record, and a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal.  While the record may be supplemented under the appellate rules if something has been omitted, the supplementation rules cannot be used to create new evidence.  Moreover, an appellate court's review of the record itself is generally limited to the evidence before the trial court at the time of the trial court's ruling."  *Whitehead v. State,* 130 S.W.3d 866, 872 (Tex.Crim.App. 2004) (footnotes omitted).

Moreover, as discussed in our consideration of appellant's first issue, the substantive error appellant contends he is potentially prevented from raising on appeal because of the incomplete record is that of improperly granted challenges for cause made by the State. Even had the trial court directed the court reporter not to record challenges for cause, appellant would not have been prevented from making a record of any objections he had to the State's challenges. And, as noted, the record contains no such objections. When the court asked for objections to the composition of the jury, appellant said he had none.

For all those reasons, we overrule appellant's second issue.

By his third issue, appellant asserts his sentence of imprisonment for ninety-nine years is grossly disproportionate to the offense of murder and therefore constitutes cruel and unusual punishment in violation of the Eighth Amendment. At its essence, appellant's argument is a ninety-nine-year sentence for murder, even with the possibility of parole, is a grossly disproportionate punishment when assessed against his level of intoxication at the time he shot Randell and the evidence that such behavior is not in his nature.

Appellant made no objection in the trial court to his sentence and therefore did not preserve the claimed error for appellate review. *See* Tex. R. App. P. 33.1(a); *Curry v. State,* 910 S.W.2d 490, 497 (Tex.Crim.App. 1995) (holding cruel and unusual punishment claim not preserved as defendant urged no objection in trial court); *Wynn v. State,* 219 S.W.3d 54, 61 (Tex.App.--Houston [1st Dist.] 2006, no pet.) (holding defendant waived error by not objecting to life sentence as cruel and unusual

10

punishment (citing *Solis v. State,* 945 S.W.2d 300, 301 (Tex. App.--Houston [1st Dist.] 1997, pet. refused))). Constitutional rights, including the right to be free from cruel and unusual punishment, can be forfeited by a failure to raise a complaint on specific constitutional grounds in the trial court. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex.Crim.App. 1996) (holding that complaint of violation of constitutional right to be free from cruel and unusual punishment was forfeited when no objection on this basis was made to trial court).

Appellant counters that following the Court of Criminal Appeals' decision in *Meadoux v. State* such omission "is no longer fatal." *Meadoux v. State,* 325 S.W.3d 189 (Tex.Crim.App. 2010). In *Meadoux,* the State argued the petitioner did not preserve a claimed Eighth Amendment cruel and unusual punishment claim. The preservation question was not raised by the State in the court of appeals, the court of appeals did not address the matter, and review was not granted for its consideration. *Id.* at 193 n.5. The Court of Criminal Appeals explained while preservation issues are systemic in the courts of appeals, that means only that a court of appeals may not reverse a judgment of conviction without addressing any issue of error preservation. *Id.* In *Meadoux,* the court of appeals affirmed the judgment of conviction. The Court of Criminal Appeals concluded that because it affirmed the judgment of the court of appeals it was unnecessary to address the preservation issue or remand the case for consideration of the matter by the court of appeals. *Id.* *Meadoux* does not excuse appellant from preserving his complaint in the trial court.

Moreover, even if we are mistaken and the law did not require preservation of his claim of an Eighth Amendment violation, we cannot agree that his sentence is unconstitutionally disproportionate to the offense for which he was convicted. Appellant was convicted of murder, a first degree felony. Tex. Penal Code Ann. § 19.02(b)(1),(c) (West 2011). In the context of proportionality challenges, the United States Supreme Court has noted that the severity and irrevocability of murder distinguishes it from other crimes. *See, e.g., Graham v. Florida,* 130 S.Ct. 2011, 2027, 176 L.Ed.2d 825 (2010) (recognizing a line between homicide and other serious violent offenses against the individual; that for the victim of the murderer, life is over).

The range of punishment available to the jury was imprisonment for life or for any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.32(a),(b) (West 2011). Appellant's sentence falls within the range prescribed by a valid statute.

But beyond consideration of punishment within the statutory range, there remains a prohibition against grossly disproportionate sentences under the United States Constitution. *Delacruz v. State,* 167 S.W.3d 904, 906 (Tex.App.--Texarkana 2005, no pet.). "[T]he Eighth Amendment has been read to preclude a sentence that is greatly disproportionate to the offense, because such sentences are cruel and unusual." *McGruder v. Puckett,* 954 F.2d 313, 315 (5th Cir. 1992) (internal quotation marks omitted). Thus, even a sentence within the statutorily prescribed range may violate the Eighth Amendment. The Eighth Amendment proportionality analysis begins with a comparison of the gravity of the offense with the severity of the sentence. *McGruder,*

12

954 F.2d at 316; *Winchester v. State,* 246 S.W.3d 386, 389 (Tex.App.--Amarillo 2008, pet. refused).  Only if we are able to infer that the sentence is grossly disproportionate to the offense will we consider the two remaining factors set out in *Solem v. Helm.*[9] *McGruder,* 954 F.2d at 316; *Winchester,* 246 S.W.3d at 389.

The Eighth Amendment does not require strict proportionality between the crime and the sentence; rather, it forbids extreme sentences that are "grossly disproportionate" to the crime.  *Ewing v. California*, 538 U.S. 11, 23, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003).  The precise contours of the "grossly disproportionate" standard are unclear, but it applies in only "exceedingly rare" and "extreme" cases. *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Id.* at 77.

According to appellant, a ninety-nine-year sentence is grossly disproportionate to the offense of murder when the cause of death was the "drunken act of an otherwise law-abiding citizen."  While appellant apparently had no prior criminal convictions, it remains that the jury was entitled to believe the other evidence before it.  The jury could have seen Randell's murder as a particularly senseless and brutal act, prompted merely by his attempt to take beer from appellant's ice chest.  The jury could have found the three shots appellant fired were not fired in rapid succession but over a period of about

---

[9] In *Solem,* the Court established three objective criteria for a reviewing court to apply in analyzing a proportionality claim: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

13

one minute.  One of the bullets passed through Randell's shoulder before entering his head but the other two shots were directly to the head, the third shot passing through the brain.  Describing the third shot, one of the witnesses told the jury he saw appellant raise the gun, point it at Randell and fire.

The jury heard Randell's wife of fifteen years describe the effect of her 48-year-old husband's death on her and their children.  She testified to her husband's intentions to build a business and one day build "her dream house."  One of Randell's daughters also testified to her difficulty dealing with her father's death.  During his testimony, the chief deputy sheriff noted the small community of Turkey had a difficult time dealing with the murder.

Appellant, who was forty years old at the time of the offense, argues his intoxication mitigates the gravity of his actions.  The law, of course, does not recognize intoxication as a defense to criminal liability.  *See* Tex. Penal Code Ann. § 8.04(a) (West 2011).  Temporary insanity caused by intoxication may serve to mitigate the penalty for an offense.  Tex. Penal Code Ann. § 8.04(b) (West 2011).  But appellant never contended he was made temporarily insane by his voluntary intoxication, and in view of the other evidence we have outlined, the jury was not required to see it as a significant mitigating factor.

On this record, a ninety-nine-year sentence for murder is not unconstitutionally disproportionate.  It is unnecessary to consider the two remaining *Solem* factors.  Appellant's third issue is overruled.

14

## Conclusion

Having overruled each of appellant's issues on appeal, we affirm the judgment of the trial court.


James T. Campbell
Justice


Publish.