

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00058-CR

NATHANIEL FAVORS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 251st District Court
Potter County, Texas
Trial Court No. 64,004-C, Honorable Ana Estevez, Presiding

January 22, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

A jury convicted appellant Nathaniel Favors of tampering with physical evidence under Texas Penal Code section 37.09(a)(1).[1]  Punishment was tried to the court.  It sentenced appellant to two years' confinement in prison, probated for three years.  Through two issues, appellant asserts the trial court erred by granting the State's

---

[1] TEX. PENAL CODE ANN. § 37.09(a)(1) (West Supp. 2013).

challenge for cause of a venireperson and admitting unauthenticated medical records. Overruling both issues, we will affirm.

## Background

Appellant does not challenge the sufficiency of the evidence so we mention only the facts necessary for disposition of the appeal. About 2:00 a.m. on August 1, 2011, an Amarillo police officer stopped appellant for a traffic violation. Making contact with appellant at his vehicle, the officer saw appellant moving an object inside his mouth. Appellant did not respond when asked about the object. Instead, he chewed and attempted to swallow. Appellant disregarded the officer's command to spit the object from his mouth and at one point the officer saw inside appellant's mouth what he described as "a crack rock-like substance." A backup officer also saw appellant chewing something. In a "quick glimpse" the backup officer saw "a white-pasty—like a white—paste substance on [appellant's] tongue, like on the inside of his lips." Appellant swallowed the object in his mouth before the officers identified it, and was arrested on the charge of tampering with physical evidence.

When an officer inventoried appellant's vehicle, he located a cardboard tube from a clothes hanger with a Brillo pad stuffed inside. The officer testified the device appeared to be drug paraphernalia used for smoking narcotics but most commonly crack cocaine. The officer referred to the item as a "paraphernalia pipe." During his trial testimony, appellant denied ownership of the pipe but acknowledged he plead guilty to a charge of possession of drug paraphernalia as a result of its presence in his

vehicle.  He testified the object in his mouth was a breath mint he was using to mask the odor of alcohol because he had been drinking heavily before the traffic stop.

Analysis

Appellant asserts through his first issue that the trial court committed harmful error when it granted the State's challenge for cause of venireperson number three (the father-in-law).

Early in the State's *voir dire* examination the prosecutor discovered that venireperson number two was the daughter-in-law of venireperson number three.  At that time, the father-in-law said serving on the same jury with his daughter-in-law "might affect us."  The daughter-in-law indicated "I don't know" when asked if she and the father-in-law could make independent decisions serving on the same jury.  But she stated "no" when asked if voting against the father-in-law would affect her in the jury room.

Later, the prosecutor questioned the panel on the State's burden of proof in a tampering with evidence case.  Discussing that issue with the prosecutor, the father-in-law indicated if tampering with evidence was shown beyond a reasonable doubt, "I think it is tampering.  But I would still have a hard time passing a judgment of guilty."

When the trial court later questioned them, both the father-in-law and the daughter-in-law acknowledged the capacity to set aside their familial relationship if selected for jury service.

The prosecutor later raised the issue of the weight of evidence the father-in-law would require of the State. The father-in-law was summoned back to the bench where, after some disagreement over the form of the question, the following exchange occurred.

[The prosecutor]: And my question to you is: If evidence is presented to you, and you believe those elements beyond a reasonable doubt—there is no reasonable doubt in your mind about those elements being true—would you return a verdict of guilty if you believed them beyond a reasonable doubt, or would you require some additional evidence from the State in that situation?

[The father-in-law]: Is it proven to me?

[The prosecutor]: Right, proven to you beyond a reasonable doubt.

[The father-in-law]: If it is proven to me, I could make a judgment of guilty, if it is proven.

Before leaving the bench the father-in-law addressed the court.

[The father-in-law]: Your Honor, can I say something, just to clear my conscience?

The court: Go ahead. Clear your conscience.

[The father-in-law]: I would hate to be sitting in the Defendant's seat, having two members of the same family. You know, I put myself in the position it is going to be hard for me to have two members that are very close—like my daughter-in-law and myself—

The court: I understand that. But I also understand that a few minutes ago you told me under oath that you could absolutely set it aside. And the Defendant has heard that too. It is okay. You know, this is a very unusual situation.

[The father-in-law]: I know.

The court: And if you do not know that or it bothers you, you can just tell me: "I really don't know if can set it aside. Maybe I can."

[The father-in-law]: When I have been back, I have been thinking about it. And I don't—I don't—I don't feel comfortable at all. I tell you the truth.

The court: Okay. So I need you just to answer this question. Do you know for sure that you can set it aside, "Yes" or "No."

4

[The father-in-law]: I don't believe I can.

The court: You don't believe you can?

[The father-in-law]: Yeah, I don't believe I really can.

The prosecutor moved to strike the father-in-law for cause. Before ruling on the motion, the court inquired if the parties would agree to strike the daughter-in-law, thus mooting the State's objection to the father-in-law. When an agreement was not reached, the court struck the father-in-law for cause. The State peremptorily struck the daughter-in-law.

Appellant expressed no objection to the court's ruling on the State's challenge for cause and when later asked by the court stated he had no objection to the jury selected. The State contends appellant's first issue presents nothing for our review. In *Ham v. State,* the defendant's counsel voiced no objection to the composition of the jury. We held that by expressing "no objection" to the composition of the jury as seated, the defendant waived any claim the court made an erroneous ruling on a challenge for cause and the representation negated any potential harm flowing from an erroneous grant of a State's challenge for cause. 355 S.W.3d 819, 823-24 (Tex. App.—Amarillo 2011, pet. refused). Likewise here appellant did not preserve for our review the complaint he asserts and affirmatively waived any objection to the composition of the jury.[2]

Moreover, even were appellant's issue properly before us, it has no merit. "In reviewing a decision by the trial judge to sustain a challenge for cause, the correct

---

[2] This is not an instance like that addressed in the recent opinion in *Thomas v. State*, 408 S.W.3d 877 (Tex. Crim. App. 2013), in which a preserved objection is said to be abandoned by a later-stated "no objection." Here, the error presented on appeal was never preserved.

standard of review is whether the totality of the voir dire testimony supports the trial judge's implied finding of fact that the prospective juror is unable to take the requisite oath and to follow the law as given by the trial judge." *Kemp v. State,* 846 S.W.2d 289, 301 (Tex. Crim. App. 1992) (citing *Goodwin v. State,* 799 S.W.2d 719, 731 (Tex. Crim. App. 1990)). Reviewing the trial court's action, we:

> [L]ook at the entire record of voir dire to determine if the evidence is sufficient to support the court's ruling on a challenge for cause. We afford great deference to the trial court's decision because the trial judge is present to observe the demeanor of the venireperson and to listen to his tone of voice. Particular deference is due when the venireperson's answers are "vacillating, unclear, or contradictory." Consequently, we will reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident.

*Gonzales v. State,* 353 S.W.3d 826, 831 (Tex. Crim. App. 2011) (citations omitted).

The State may challenge any venireperson for cause who "has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." TEX. CODE CRIM. PROC. ANN. art. 35.16(b)(3) (West 2006). A venireperson who is guided by his personal beliefs rather than the law is not qualified to sit as a juror. *Castillo v. State,* 739 S.W.2d 280, 296 (Tex. Crim. App. 1987).

Based on the father-in-law's vacillating answers concerning his ability to set aside the family relationship should he and the daughter-in-law be selected for jury service, combined with his unclear responses concerning the weight of evidence required to convict, we would be unable to say the trial court abused its discretion by granting the State's challenge for cause and striking the father-in-law.

For both these reasons, appellant's first issue is overruled.

By his second issue appellant contends the trial court erred by admitting hospital records proffered by the State which were not properly authenticated because the business records affidavit had not been on file 14 days at the time of trial as required by rule of evidence 902(10).

Testimony showed that after appellant's arrest, an officer took him to a hospital. The officer told the jury that medical attention was sought because appellant claimed health problems and may have swallowed a controlled substance. In opening statement, counsel for appellant told the jury, "And [the officer] did take [appellant] to [the hospital] and he did make him give a urine sample. But I don't think you are ever going to hear one word about what was found in that urine sample, because it just doesn't exist, apparently." In his testimony, the officer denied telling appellant he would give a urine sample at the hospital and could not recall whether appellant gave a urine sample. However, appellant testified he provided the officer a urine sample in a cup.

On cross-examination of appellant, the State offered appellant's medical records from his hospital evaluation that night, attached to the business records affidavit of the hospital records custodian. The records do not contain the results of a urinalysis or otherwise indicate a urine test was ordered. Appellant objected to admission of the records on the grounds that the affidavit did not meet the requirements of rule of evidence 902(10), the records were hearsay, and were offered to bolster the testimony of the officer. Appellant also asserted that because the affidavit was made on the day following his early-morning-hours evaluation, the records attached could not have been complete. It is undisputed that the affidavit was not filed with the district clerk. The trial court postponed ruling on the admissibility of the records overnight so that appellant

could check for the existence of additional records. The following day at trial appellant requested a ruling on the State's proffer of the hospital records. Counsel for appellant disclosed that appellant went to the hospital but was unable to locate any additional records. The trial court admitted the records but instructed the jury to limit its consideration of them to "explaining what transpired at the hospital on the night [appellant] was transported there."

We review a trial court's evidentiary rulings under an abuse-of-discretion standard and will not disturb the court's ruling unless it falls outside the zone of reasonable disagreement. *Burden v. State,* 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); *Montgomery v. State,* 810 S.W.2d 372, 378 (Tex. Crim. App. 1990) (op. on reh'g). The erroneous admission of evidence is generally nonconstitutional error and therefore harmless if after examining the record as a whole an appellate court is reasonably assured the error did not influence the jury's verdict or had but a slight effect. TEX. R. APP. P. 44.2(b); *Garcia v. State,* 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).

The indictment alleged appellant, knowing an investigation was in progress or pending, knowingly altered, destroyed and concealed "a thing, namely, a white substance" by swallowing it.[3] During his testimony, appellant acknowledged he chewed

_____

[3] The court's charge stated, "Our law provides that a person commits the offense of Tampering with Physical Evidence if, they, knowing that an investigation is pending or in progress, alters, destroys, or conceals any record, document, or thing, with the intent to impair its verity, legibility or availability as evidence in the investigation." *See Williams v. State,* 270 S.W.3d 140, 142 (Tex. Crim. App. 2008) (citing TEX. PENAL CODE ANN. § 37.09(a)(1) ("Three elements define the offense of tampering with physical evidence: (1) knowing that an investigation or official proceeding is pending or in

8

the item in his mouth and "hid it" from the officers. He testified the item was a breath mint. He told the jury he knew he had too much to drink to be driving, and expected the officer would "smell this alcohol," so thought he "better get something for my breath." He testified he tried to keep the officers from smelling his breath, and "hid" the breath mint as a part of that effort. He denied he was a user of cocaine.

Officers testified appellant first told them he had nothing in his mouth, then said he had aspirin in his mouth and later said it was "a chip." The jury also saw and heard the police recording of the officers' encounter with appellant. The recording depicts appellant's repeated assertion to the officers that he had nothing in his mouth. It also depicts appellant's exclamation, "It's too late," made after the officers' efforts to get him to spit the object from his mouth.

Although proof of the evidentiary value of the destroyed or concealed substance was not a part of the State's burden,[4] the State made clear to the jury its contention the substance was crack cocaine. Appellant sought to defuse that contention and the evidence supporting it. As a part of that effort, by his opening statement, counsel for appellant effectively challenged the State to prove appellant did not give a urine sample at the hospital. The State presented the hospital records as a response to counsel's challenge.

---

progress, (2) a person alters, destroys, or conceals any record, document, or thing, (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding").

[4] *See Stewart v. State,* 240 S.W.3d 872, 873-74 (Tex. Crim. App. 2007); *Williams,* 270 S.W.3d at 144.

Assuming *arguendo* the trial court erred in admitting appellant's hospital records, we find the error harmless. The evidence the jury heard did not focus on the events occurring at the hospital after appellant's arrest. Nor was there any significant attention given in argument to the existence of, or lack of, a urine sample or urinalysis report from the hospital. After examining the record, we are satisfied the diverging testimony regarding whether or not appellant gave a urine sample at the hospital does not present an issue of any significance. We are further satisfied that, particularly when viewed in light of the court's limiting instruction, the admission of the hospital records, if erroneous, had no influence, or at most a slight influence, on the jury's verdict.

Appellant's second issue is overruled.

## Conclusion

Having overruled appellant's two issues on appeal, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.