

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-19-00388-CR

---

**JOSE LUIS MARTINEZ, JR., APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 31st District Court
Gray County, Texas
Trial Court No. 10568, Honorable Steven Emmert, Presiding

---

July 13, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

A jury convicted Appellant Jose Luis Martinez, Jr. of murder[1] and assessed his punishment at 70 years' confinement in prison and a fine of $10,000. Through a single issue, Appellant argues his term of confinement is grossly disproportionate to the gravity of the offense, constituting cruel and unusual punishment. We overrule Appellant's issue and affirm the judgment of the trial court.

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2019).

## Background

At approximately 11:20 p.m. on August 20, 2016, Texas Department of Public Safety trooper Jesse Cerda was monitoring traffic by radar from his patrol vehicle near Pampa, Texas. He detected a westbound vehicle traveling approximately 13 miles per hour above the posted speed limit. It is undisputed Appellant was the driver and lone occupant of that vehicle. Cerda activated the lights on his cruiser and began pursuit. Appellant did not stop.

With Cerda following, Appellant ran two red lights, turning west on U.S. Highway 60 at the second light. Before Appellant turned, Cerda observed the brake light on Appellant's pickup activate briefly, as well as the right turn indicator. This showed Cerda that Appellant was alert; "that he had . . . some knowledge of what he was doing."

Cerda remained in pursuit. He observed Appellant was traveling over 70 miles per hour in a 55 mile per hour zone. According to the testimony of a Department of Public Safety crash reconstructionist, the speed of Cerda's vehicle reached 106 miles per hour. Appellant's vehicle crossed the median and entered the east-bound traffic lanes, where he struck an oncoming car driven by C.B., and which was occupied by H.M.B., and their two daughters, J.B., age 13, and H.B., age 11. J.B. died as a result of injuries received in the collision. Trial evidence suggested Appellant did not brake, swerve, or slow down before the collision.

Appellant was transported by helicopter to an Amarillo hospital. Because Appellant refused to voluntarily provide a blood sample, troopers obtained a search warrant, and thereby, a specimen of Appellant's blood. Appellant's blood sample was

2

tested by Department forensic scientists who presented the results at trial. According to their testimony, the alcohol concentration in Appellant's blood placed him near the legal threshold of intoxication. Additional testimony showed the blood sample contained a low concentration of Xanax, an anti-anxiety medication.

Appellant was charged with murder. The indictment alleged Appellant:

> did then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to-wit; driving a vehicle at another occupied moving vehicle, that caused the death of J.B., and the defendant was then and there in the course of intentionally and knowingly committing a felony, to-wit: Evading Arrest/Detention with a Vehicle, and said death of J.B. was caused while the defendant was in the course of and in furtherance of the commission or attempt of said felony, against the peace and dignity of the State.

Appellant's recorded statement, taken by a Texas Ranger, was played for the jury during the guilt-innocence phase of trial. Appellant told the ranger he had no memory after about 7:00 p.m. on the night of the collision. He recalled prior to that time being with his brother in Perryton, Texas. According to Appellant he drank two screwdrivers.

The jury found Appellant guilty of murder. At the punishment phase of trial, the State presented evidence of Appellant's considerable offense history. It consisted of five years' deferred adjudication community supervision for sexual assault, community supervision for misdemeanor assault with bodily injury, deferred adjudication community supervision for failure to register as a sex offender, and at least two other convictions for driving while intoxicated. Appellant testified he had been drinking on the night of the sexual assault offense and at the time of the assault with bodily injury offense. Appellant testified he was an alcoholic. On cross-examination, Appellant stated he was not aware

3

of the facts of the underlying offense "because of the alcohol and the Xanex [sic] that was in my system at the time[.]"

In closing argument, the State asked the jury to assess a sentence of life in prison. The jury assessed punishment at 70 years' confinement and made a deadly weapon finding. The trial court imposed sentence accordingly and included in the judgment the deadly weapon finding. Appellant's amended motion for new trial was overruled by operation of law.

Analysis

Appellant does not challenge the evidence of his guilt; indeed, he admits all the evidence presented against him is true. Rather, Appellant argues his 70-year sentence of confinement is grossly disproportionate, constituting cruel and unusual punishment. The offense of murder is a first-degree felony punishable by imprisonment for life or for any term of not more than 99 years or less than 5 years. TEX. PENAL CODE ANN. §§ 19.02(c), 12.32 (West 2019). As applicable here, a person commits murder if he commits a felony, other than manslaughter, and in the course of the commission he commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3).

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. TEX. PENAL CODE ANN. § 38.04(a) (West 2016). A violation of section 38.04 is a third degree felony if another suffers serious bodily injury as a direct result of an attempt by the officer from whom the actor is fleeing to apprehend the actor while the actor is in flight. TEX.

4

PENAL CODE ANN. § 38.04(b)(2). The offense is a second-degree felony "if another suffers death as a direct result of an attempt by the officer from whom the actor is fleeing to apprehend the actor while the actor is in flight." TEX. PENAL CODE ANN. § 38.04(b)(3).

It is undisputed the sentence imposed was within the range of punishment authorized by the Legislature. Generally, a sentence within the statutory range of punishment for an offense is not excessive, cruel, or unusual punishment. *Winchester v. State,* 246 S.W.3d 386, 388 (Tex. App.—Amarillo 2008, pet. ref'd). When examining sentences for non-capital felonies like murder, the Court of Criminal Appeals has described "the sentencer's discretion to impose any punishment within the prescribed range to be essentially 'unfettered.'" *Ex parte Chavez,* 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (quoting *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990)). As the court continued, "Subject only to a very limited, exceedingly rare, and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." *Ex parte Chavez,* 213 S.W.3d at 323-24. Within the context of proportionality challenges, the United States Supreme Court has noted that the severity and irrevocability of murder distinguishes it from other crimes. *Ham v. State,* 355 S.W.3d 819, 825-26 (Tex. App.—Amarillo 2011, pet. ref'd) (citing *Graham v. Florida,* 560 U.S. 48, 69, 130 S. Ct. 2011, 176 L. Ed.2d 825 (2010) (recognizing a line between homicide and other serious violent offenses against the individual: for a murder victim, life is over)).

Evaluation of the proportionality of a sentence of a term of years requires a court assess the severity of the sentence in light of the harm caused or threatened the victim,

5

the offender's culpability, and the offender's prior adjudicated and unadjudicated offenses. *State v. Simpson,* 488 S.W.3d 318, 323 (Tex. Crim. App. 2016) (citing *Graham,* 560 U.S. at 60); *Noyes v. State,* No. 07-16-00229-CR, 2018 Tex. App. LEXIS 3572, at *6 (Tex. App.—Amarillo May 21, 2018, no pet.) (mem. op., not designated for publication) (citing *Graham,* 560 U.S. at 60). In the rare case where this threshold comparison gives rise to an inference of gross disproportionality of sentence, the court then compares the defendant's sentence with the sentences received for similar crimes in this jurisdiction and sentences received in other jurisdictions. *Simpson,* 488 S.W.3d at 323; *Noyes,* 2018 Tex. App. LEXIS 3572, at *6.

We therefore look to the harm Appellant caused the victims, his culpability, and his prior offense record. Appellant's criminal record notes at least two prior convictions for driving while intoxicated. On August 20, 2016, Appellant again chose to consume alcohol before driving; he also consumed Xanax. As he drove toward Amarillo to visit his girlfriend, he chose to exceed the speed limit and ignore the continued direction of law enforcement to pull over and stop. He chose to disregard two red traffic signals, although he was cognizant enough to tap his brakes and signal a turn. He chose to evade law enforcement by accelerating his vehicle to a speed that was substantially above the legal limit. Despite the instruction of a pursuing trooper to pull over, Appellant drove his vehicle into the opposite lane of traffic, where he collided with a vehicle occupied by a family of four. The collision resulting from Appellant's conduct caused severe harm on the family and ended the life of thirteen-year-old J.B.

H.B. testified that as their car came to rest following the impact, he saw J.B. "hanging out of the car and . . . panicked. I begged her to wake up but she couldn't. I

unbuckled her seat belt, took her out of the car and laid her on the side of the road." When C.B. was asked how her daughter's death affected her, she testified, "Some days you force yourself to breathe."

With apparent regard for the culpability consideration, Appellant argues he does not remember evading arrest or detention, nor did he remember anything else about the offense. Appellant presents evidence he was remorseful and grew "teary-eyed" while discussing the events with a Texas Ranger at the county jail. While this might serve as evidence of remorse during the mitigation/punishment stage at trial, on appeal it has little relevance to the constitutional disproportionality of sentence theory Appellant advances. *Simpson,* 488 S.W.3d at 324.

Because the Legislature declares the public policy of this state through the laws it enacts, "the Legislature possesses the sole authority to establish criminal offenses and designate applicable penalties." *Martinez v. State,* 323 S.W.3d 493, 501 (Tex. Crim. App. 2010). The Penal Code provisions here demonstrate it is the public policy of this State that a person convicted of murder may be sentenced to spend up to the remainder of his life in prison. Appellant's sentence of confinement was not the maximum possible and fell within the range established by the Legislature. Appellant has not shown, nor can we conclude, that his sentence of confinement for a term of 70 years for murder supports an inference of gross disproportionality. In light of the facts presented, we conclude Appellant's sentence does not offend the Eighth Amendment. Accordingly, it is unnecessary to take up the second prong of the analysis, comparing Appellant's sentence with those received by other offenders in this jurisdiction and with the sentences imposed for the same crime in other jurisdictions. Appellant's issue is overruled.

## Conclusion

Having overruled Appellant's sole issue on appeal, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.