

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-13-00245-CR

_____

**RUSSELL SCOTT WALDEN,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**


_____


**From the 18th District Court**
**Johnson County, Texas**
**Trial Court No. F45382**


## MEMORANDUM  OPINION


A jury found Appellant Russell Walden guilty of continuous sexual abuse of a young child (Jane, a pseudonym) and assessed a life sentence.  Raising three issues, Walden appeals.  We will affirm.

We begin with issue two, which asserts that the evidence is insufficient.  The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Jane testified that she first met Walden on April 1, 2007 (Jane's ninth birthday) at the Cleburne Wal-Mart, where her mother Karen (a single mother) and Walden both worked. As a result of interacting with Walden, Karen began accepting Walden's offers to babysit Jane and her younger sister Kate (a pseudonym). This soon led to a dating relationship, and Karen and Walden married on September 11, 2007. Also, they all

moved from Cleburne into an apartment in Keene. They later moved into a mobile home in Keene.

When Walden babysat them, both Jane and Kate enjoyed being with Walden, but after Walden and Karen married, they testified that his conduct toward them changed to being abusive. Jane, who was age fifteen at the time of trial, testified that in December of 2007, when she was age nine, Walden took Jane and Kate to the Traveler's Inn in Cleburne to spend the night after he and Karen had gotten into an argument. Jane said that she and Walden slept in one bed and Kate slept in the other. Kate, who is three years younger than Jane, testified that she and Jane went to a motel with Walden after he had gotten into an argument with their mother.

That night, Walden touched the outside of Jane's vagina and anus and touched her vagina with his penis, and then he put his penis in her anus. Jane said that, thereafter, Walden sexually abused her on almost a daily basis (when Karen was gone from the home) in the same ways. When she was age eleven or twelve and they had moved into the mobile home, Walden eventually began to put his penis in Jane's mouth. This, she said, occurred many times and continued until she ran away. Jane testified that Walden also had Jane masturbate him to ejaculation many times.

On July 31, 2010, when Jane was age twelve, Walden scolded Jane and hit her on the leg because he was dissatisfied with how she was cleaning the floor, and Jane ran away to a friend's home. Jane told the friend's mother of physical abuse by Walden, and the friend's mother called Keene police. While discussing Walden's physical abuse with Keene Police Lieutenant Patrick Jones, Jane divulged that there had also been

sexual abuse. Therefore, according to Jones, he arranged for a forensic interview of Jane at the Children's Advocacy Center that evening, and a few days later, a sexual-assault exam took place. Jones also contacted Child Protective Services.

Katy Hodges testified that she was a forensic interviewer at the Johnson County Children's Advocacy Center and interviewed Jane. Hodges said that Jane told her that Walden rubbed her vagina with his hand, put his penis in her mouth, and sometimes showed her his sperm. Jane told her that this happened three to four times a week when her mother would go to the store.

Rebecca Sullivan, a forensic nurse who performed the sexual-assault exam on Jane, testified that Jane told her that Walden began putting his penis in her mouth in May of 2010 and that it had last happened after July 4th. Jane told her that Walden had begun rubbing the outside of her vagina when she was age nine. Sullivan testified that Jane told her that Walden put his mouth on her genitals and that she masturbated Walden to ejaculation. Jane also told Sullivan that Walden rubbed her anus with his hand and penis and that the anal touching was painful, which caused Sullivan to be concerned that there was penile penetration. The finding on the anal exam was normal, which Sullivan said was not surprising because the last abuse had occurred almost a month before, superficial injuries to the anus heal rapidly, and the anus is made to expand and stretch. Sullivan admitted that there was no physical evidence of sexual abuse.

The defense called attorney Toni Driver as a witness. In May of 2009, Driver had been appointed to do a home study in anticipation of Walden's adoption of Jane and

Kate, and Driver testified that she saw no signs of abuse. She questioned Jane and Kate about discipline and abuse and concluded that nothing seemed amiss; they "seemed like happy children." But Jane testified that Walden had instructed the girls to put "happy things" in their journals, to make a good showing for Driver during the home visit, and not to mention the abuse because it was a secret. Jane also said that she was afraid of Walden and knew that she would get hit if she told anyone.

Walden was voluntarily interviewed by police. A video recording of that interview was shown to the jury. In that interview, Walden denied sexually abusing Jane.

In arguing the insufficiency of the evidence, Walden asserts that the State presented "little evidence" that Walden sexually abused Jane. Walden notes that Jane testified that Kate was present when Walden sexually abused her, but Kate, who is three years younger than Jane, testified that she never witnessed Walden sexually abuse Jane. Aside from the testimony of Jane, the outcry witness, and the nurse, Walden argues that there is no direct evidence of sexual abuse and there is no physical evidence of sexual abuse or trauma by either the nurse or police. A child victim's testimony alone, however, is sufficient to support a conviction for aggravated sexual assault of a child or indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2005); *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *see also Cantu v. State,* 366 S.W.3d 771, 775 (Tex. App.—Amarillo 2012, no pet.).

> The courts will give wide latitude to testimony given by child victims of sexual abuse. *Villalon v. State,* 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). The victim's description of what happened need not be precise, and the child is not expected to communicate with the same level of sophistication as an adult. *Soto,* 267 S.W.3d at 332. Corroboration of the victim's testimony by medical or physical evidence is not required. *Id.* at 332; *Ozuna v. State,* 199 S.W.3d 601, 606 (Tex. App.—Corpus Christi 2006, no pet.).

*Cantu,* 366 S.W.3d at 776.

A jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Here, by finding Walden guilty, the jury obviously believed Jane's testimony. As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Walden committed the offense of continuing sexual abuse of a young child beyond a reasonable doubt. Issue two is overruled.

In issue one, Walden complains of the admission of extraneous-offense evidence. This evidence consists of two categories: (1) Kate's testimony that Walden sexually abused her; and (2) Jane's and Kate's testimony of physical abuse, including deprivations of food, by Walden and their mother Karen. We review the trial court's admission of extraneous-offense evidence for abuse of discretion, and as long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion. *See Newton v. State,* 301 S.W.3d 315, 317 (Tex. App.—Waco 2009, pet. ref'd) (citing *De La Paz v. State,* 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009)).

Over Walden's Rule 404(b) and 403 objections, Kate testified that Walden rubbed her vagina with his hand and rubbed it with lotion. She could not say how many times it happened, but it happened more than five times. Kate also said that Walden touched her anus with his hand and digitally penetrated her anus more than once. She also testified that she saw Walden walking around the house without clothes more than once.

In both the trial court and on appeal, among other reasons, the State has asserted that Kate's testimony of similar sexual abuse by Walden was admissible to rebut his defensive theory of fabrication. The State may present extraneous-offense evidence to rebut a theory of fabrication. *Bass v. State,* 270 S.W.3d 557, 563 (Tex. Crim. App. 2008); *Newton,* 301 S.W.3d at 317-18. The extraneous misconduct must be at least similar to the charged offense. *Newton,* 301 S.W.3d at 317. The defense's opening statement can open the door to the admission of extraneous-offense evidence to rebut a defensive theory of fabrication raised in the opening statement. *Bass,* 270 S.W.3d at 563 & n.7; *see also Jones v. State,* No. 10-13-00006-CR, 2013 WL 5494678, at *3-4 (Tex. App.—Waco Sept. 26, 2013, pet. ref'd) (mem. op., not designated for publication).

In the defense's opening statement, defense counsel suggested that Jane did not like doing household chores and Walden's discipline and thus became resentful of Walden:

> At some point in time [Jane] did not like this and became resentful of Mr. Walden. Mr. Walden's methods might be unconventional to some but they're not illegal. … However, … [Jane], … when asked to do her chores, became upset, which is, I think you will hear, customary. She was upset about it and ran away from home. Mr. Walden called the police to

report this child running away from home. … Again, the police responded and eventually located [Jane] where she made these allegations of physical and sexual abuse. She had never -- there's no evidence that she had ever indicated or alleged this type of abuse prior to this occasion, even though she had many opportunities to say so.

There's no physical evidence to support these allegations of sexual abuse. She's changed her story several times and her story continues to change.

In cross-examining Detective Shannon Kimberling, who testified as an expert on grooming in child sexual-abuse cases, the defense asked Kimberling about false outcries. She said that she has investigated cases where the child made a false outcry and that false outcries do occur, and that she has seen them occur with stepparents. And in cross-examining Lieutenant Jones, the defense elicited testimony from him that he had investigated cases where children made false allegations of sexual abuse.

Because Walden raised the defensive theory of fabrication in the defense's opening statement and in cross-examining State's witnesses before Kate's testimony about sufficiently similar sexual abuse by Walden, the trial court did not abuse its discretion in admitting the extraneous-offense evidence pertaining to the alleged sexual abuse of Kate by Walden. *See Jones,* 2013 WL 5494678, at *3-4.

Under Rule 403, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

[A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the

evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Newton*, 301 S.W.3d at 319 (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted)).

"Rule 403 'envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Id.* at 322-23 (quoting *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)). Considering the above factors, we cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by Kate's testimony and its probative value. Thus, the trial court did not abuse its discretion by overruling Walden's Rule 403 objection to Kate's testimony.

We next address the trial court's admission of extraneous-offense evidence of physical abuse of Jane and Kate by Walden. When the State notified the trial court that it was going to get into domestic-violence testimony in its direct examination of Jane, Walden lodged relevance and extraneous-offense objections and an objection that, if the evidence was relevant, "it would be more prejudicial than probative."[1]

Jane gave the following testimony about the alleged physical abuse: Walden (and Karen) withheld food from the girls; fed them very little food; at times refused to feed them a meal as punishment; locked the girls in their bedroom at night and put

---

[1] We thus disagree with the State's assertion that Walden did not make a Rule 403 objection.

screws in their bedroom window so they could not sneak out and get food; strip-searched them when they got home from school to make sure they were not sneaking in food; made them run laps around the house before meals; and gave them bare-bottom spankings. Jane also said that her hair was pulled and that Walden hit her in the eye with his fist.

"An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (citing *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)); *see Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). "This rule applies whether the other evidence was introduced by the defendant or the State." *Leday*, 983 S.W.2d at 718.

The State notes that evidence of these extraneous acts was admitted without objection in the testimony of Lieutenant Jones, Hodges, and Kate. Thus, error, if any, in allowing the introduction of these extraneous offenses was cured when the same evidence was admitted elsewhere without objection. We overrule Walden's first issue.

Walden's third issue asserts that his life sentence is grossly disproportionate and excessive.[2] A defendant must complain or object in the trial court about an allegedly

---

[2] Generally, a sentence within the statutory range of punishment for an offense is not excessive, cruel, or unusual punishment. *See Winchester v. State*, 246 S.W.3d 386, 389 (Tex. App.—Amarillo 2008, pet. ref'd); *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.). A narrow exception to this rule is recognized where a sentence is grossly disproportionate to the offense. *See Moore v. State*, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref'd); *see also Harmelin v. Michigan*, 501 U.S. 957, 1004-05, 111

disproportionate sentence to preserve his complaint for appeal. *Ham v. State*, 355 S.W.3d 819, 825 (Tex. App.—Amarillo 2011, pet. ref'd); *Gertz v. State*, No. 10-11-00008-CR, 2012 WL 3799146, at *2 (Tex. App.—Waco Aug. 30, 2012, no pet.) (mem. op., not designated for publication) (citing *Wynn v. State*, 219 S.W.3d 54, 61 (Tex. App.—Houston [1st Dist.] 2006, no pet.); and *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd)). Because Walden did not raise his complaint about his sentence in the trial court, issue three is not preserved and is thus overruled. TEX. R. APP. P. 33.1.

Having overruled all of Walden's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed September 4, 2014
Do not publish
[CRPM]

---

S.Ct. 2680, 2707, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring); *Solem v. Helm*, 463 U.S. 277, 290-92, 103 S.Ct. 3001, 3010-11, 77 L.Ed.2d 637 (1983); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).