

# IN THE
# TENTH COURT OF APPEALS

## No. 10-18-00353-CR

**WINSTON LUKE MCDANIEL,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 40th District Court
Ellis County, Texas
Trial Court No. 43956 CR**

## MEMORANDUM OPINION

In eleven issues, appellant, Winston Luke McDaniel, challenges his convictions for

four counts of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021

(West 2019). We affirm.

# I. THE ADMISSION OF OUTCRY TESTIMONY

In his second issue, McDaniel complains that the trial court abused its discretion by admitting the testimony of two outcry witnesses—the child victim's mother, Amanda, and the forensic interviewer, Teresa Evans. We disagree.

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's evidentiary decision, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

To be admissible under article 38.072 of the Code of Criminal Procedure, outcry testimony must be elicited from the first adult to whom the outcry is made. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2019); *see also Chapman v. State*, 150 S.W.3d 809, 812 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Article 38.072 requires "that the outcry witness . . . be the first person, 18 years or older, to whom the child makes a statement that in some discernible manner described the alleged offense" and provides more than "a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).

Testimony of a second outcry witness is admissible if it concerns a separate, discrete instance of sexual abuse from the instance testified about by the first outcry witness. *See Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd). The outcry testimony of a second witness is not admissible, however, when the witness merely provides additional details regarding the same instance of sexual abuse. *Brown v. State*, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref'd) ("[B]efore more than one outcry witness may testify, it must be determined the outcry concerned different events and was not simply a repetition of the same event told to different individuals."); *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd) ("[T]he proper outcry witness is not to be determined by comparing statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense."). The outcry witness is not person-specific, but rather event-specific. *Broderick*, 35 S.W.3d at 73; *see Mireles v. State*, 413 S.W.3d 98, 104 (Tex. App.—San Antonio 2013, pet. ref'd); *Josey v. State*, 97 S.W.3d 687, 692 (Tex. App.—Texarkana 2003, no pet.) (concluding that the mother was the proper outcry witness for an act of oral conduct, but the forensic interviewer was the proper outcry witness for an act of digital penetration).

Before trial, the trial court conducted a hearing on the admissibility of outcry statements pursuant to article 38.072 of the Code of Criminal Procedure. The State offered two outcry witnesses—Amanda and Evans. During the hearing, Amanda noted that the

child victim first stated that she was being sexually abused in December 2014, when she was four years old, at Amanda's grandparents' house. Amanda further testified that the child victim first told Amanda's grandmother, Joyce, about the abuse; however, Joyce passed away before the trial. Amanda recalled that the child victim told her: "[Y]ou know how like when big people basically kiss and how sometimes they use their tongue? . . . [T]hat happened but on my tee-tee." When referring to her "tee-tee," the child victim pointed to her vagina. The child victim stated that the kissing happened "a lot," and she demonstrated for Amanda how McDaniel touched her vaginal area with his hands, spreading her vaginal lips apart and rubbing between them. The child victim also told Amanda that McDaniel: put his "wee-wee . . . in her butt," moved up and down, and peed "on her back"; and also tried to put his penis in her mouth and "pushed her head really, really hard," but she said "no, no, no, no."

Evans recounted that she conducted a forensic interview of the child victim on December 30, 2014. During the interview, the child victim described how McDaniel took off his clothes and stood on top of the bed over her, showing her his penis. The child victim also stated that McDaniel kissed her butt while she was lying on the bed watching a video, specifically mentioning that McDaniel's tongue went "in her butt" when he kissed her.

In the trial court, McDaniel objected to the outcry statements for extraneous offenses and objected that Amanda was the only proper outcry witness. The trial court

overruled both objections and permitted both Amanda and Evans to testify about the child victim's statements.

On appeal, McDaniel first argues that Amanda and Evans were not the proper outcry witnesses because Joyce was the first adult to whom the child victim spoke about the sexual abuse. This argument was not made in the trial court and, thus, was not preserved. *See* TEX. R. APP. P. 33.1(a).

And even if McDaniel had preserved his complaint regarding Joyce's failure to testify, the complaint lacks merit because the record demonstrated that Joyce had passed away before trial and a person who is unable or unavailable to testify at trial is not a proper outcry witness. *See Foreman v. State*, 995 S.W.2d 854 (Tex. App.—Austin 1999, pet. ref'd) (interpreting the "first person" in article 38.072, section 2(a)(2) as "the first adult who can remember *and relate at trial* the child's statement that in some discernible manner describes the alleged offense" (emphasis added)); *see also Reynolds v. State*, 227 S.W.3d 355, 369 (Tex. App.—Texarkana 2007, no pet.) (same); *Carty v. State*, 178 S.W.3d 297, 306 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (same). Furthermore, McDaniel conceded at the article 38.072 hearing that Amanda was the proper outcry witness. Moreover, Evans was the proper outcry witness because she testified about a different instance of abuse perpetrated against the child victim than Amanda. *See Tear v. State*, 74 S.W.3d 555, 559 (Tex. App.—Dallas 2002, pet. ref'd) ("Multiple outcry witnesses can testify about different instances of abuse committed by the defendant against the victim.

If the child victim first described one type of abuse to one outcry witness, and first described a different type of abuse to a second outcry witness, the second witness could testify about the different instance of abuse." (citing *Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd))).

Next, McDaniel argues that the outcry witnesses impermissibly testified about extraneous offenses. However, in his appellant's brief, McDaniel did not identify what extraneous offenses were impermissibly testified to by the outcry witnesses. Therefore, this complaint is inadequately briefed and, thus, presents nothing for review. *See* TEX. R. APP. P. 38.1(i) (requiring clear and concise argument for the contentions made, with appropriate citations to authorities and to the record); *see also Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) ("This Court has no obligation to construct and compose appellant's issues, facts, and arguments 'with appropriate citations to authorities and to the record.'" (quoting TEX. R. APP. P. 38.1(i))).

And even if this complaint had been preserved, the purported extraneous offenses were admissible as same-transaction contextual evidence. *See Prible v. State*, 175 S.W.3d 724, 731-32 (noting that evidence of "other crimes, wrongs, or acts" may be admissible as same-transaction contextual evidence when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction"); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (stating that same-transaction contextual evidence is "admissible to show the context in which the criminal

act occurred" and that "events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence"). We overrule McDaniel's second issue.

## II. VOIR DIRE OF A LAY WITNESS

In his third issue, McDaniel asserts that he was improperly prevented from conducting voir dire of a witness prior to the admission of the State's Exhibit 1, which were telephone calls the witness recorded.

Between juror selection and the start of the guilt-innocence phase of trial, the trial court conducted a hearing outside the presence of the jury on the admissibility of State's Exhibit 1, which were recordings of cell phone conversations between McDaniel and Amanda. At this hearing, Amanda testified about the conversations, how she made the recordings using the "Tape-A-Call" app, and that the recordings fairly and accurately depicted the conversations. McDaniel extensively cross-examined Amanda regarding the recordings, asking her about blank space at the front of each call, what Amanda told McDaniel during the blank space before the recording began, whether she had edited any of the calls after they were made, and whether she had deleted any calls.

At trial, Amanda testified that she used the "Tape-A-Call" app to make the recordings and that she had used both the cell phone and the app prior to calling McDaniel to ensure that the app recorded calls. She also accounted for the blank space at the beginning of each call, explaining that it was the time the app took to "merge" into

the call and start recording. After listening to State's Exhibit 1, Amanda testified that the exhibit was a fair and accurate representation of her conversations with McDaniel. When the State offered the exhibit into evidence, McDaniel requested to take Amanda on voir dire. He stated that he did not believe the State "met the predicate" and wanted to voir dire Amanda to see if she knew how the app worked. The trial court overruled McDaniel's objection, denied him the opportunity to take the witness on voir dire, and told McDaniel that he could cross-examine Amanda on that issue. The record reflects that McDaniel later cross-examined Amanda on whether she could control when the calls merged and what she had told McDaniel during the silent portion before the recordings began.

As discussed earlier, the trial court held a pretrial hearing where McDaniel was given the opportunity to cross-examine Amanda about the tapes. In fact, McDaniel extensively cross-examined Amanda about the tapes at the pretrial hearing and later before the jury—more than thirty pages of the record. The trial court has broad discretion managing trial, *see Dang v. State*, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005), and McDaniel does not automatically get an opportunity to interrupt the State's case-in-chief to cross-examine a witness by use of voir dire questioning. *See* TEX. R. EVID. 611 (providing the trial court with broad discretion in controlling the mode and order of interrogation of witnesses and presentation of evidence so long as the exercise of

discretion is reasonable, efficient, and in the pursuit of justice).  Therefore, we conclude that the trial court did not err.  Accordingly, we overrule McDaniel's third issue.

### III.    ALLEGED JUROR BIAS

In his fourth issue, McDaniel argues that he was denied his Sixth Amendment right to an unbiased jury when the trial court denied his request to question a juror about purportedly disparaging remarks made about defense counsel.

A juror must keep an open mind as to the ultimate question before him or her until all the evidence has been received.  *Quinn v. State*, 958 S.W.2d 395, 403 (Tex. Crim. App. 1997) (noting that "it defies common sense and human nature to require that a juror have no impressions or opinions until the judge sends the jury to deliberations").  When a sitting juror makes statements outside of deliberations that indicate bias or partiality, such as bias can constitute jury misconduct that prohibits the defendant from receiving a fair and impartial trial.  *Granados v. State*, 85 S.W.3d 217, 235 (Tex. Crim. App. 2002).  If a juror's statements or conduct raise a question as to whether the juror is biased, the trial court should conduct an inquiry to determine the juror's intent when making the statement.  *Id.* at 236; *see Ocon v. State*, 284 S.W.3d 880, 886 (Tex. Crim. App. 2009) (stating that juror questioning "is a helpful tool for measuring the necessity for a mistrial," but "it is not required").  The trial court retains discretion in determining whether a juror is biased, and we review the trial court's decision in the light most favorable to its recorded findings.  *Granados*, 85 S.W.3d at 236; *see Anderson v. State*, 633 S.W.2d 851, 853-54 (Tex.

Crim. App. [Panel Op.] 1982) ("When bias or prejudice are not established as a matter of law, the trial court has discretion to determine whether bias and prejudice actually exists to such a degree that the prospective juror is disqualified and should be excused from jury service."). The trial court also has discretion in determining whether to grant a motion for mistrial based on allegations of juror misconduct. *Granados*, 85 S.W.3d at 236.

In *Ocon*, the Court of Criminal Appeals opined that:

> Our case law does not establish juror questioning as a mandatory remedy, nor do the Texas Rules of Evidence. Rule 606(b) permits, but does not require, juror testimony relating to improper outside influence or qualification to serve. And, contrary to Appellant's assignment of the burden to the court and the State, if jurors are questioned, it should be at the behest of the movant. Precedent on this issue, including the case cited in Appellant's brief, establishes that it is incumbent upon the party moving for a mistrial to request an inquiry of the jurors. . . .
>
> That the party alleging juror misconduct, not the State nor the court, should initiate juror questioning, is consistent with our rules of error preservation. Questioning jurors who allegedly participated in misconduct is a less drastic remedy than a mistrial. An appellant who moves for a mistrial without first requesting a less drastic alternative forfeits appellate review of that class of events that could have been cured by the lesser remedy.

284 S.W.3d at 886-87 (internal citations omitted).

In the instant case, defense counsel informed the trial judge of the following:

> Your Honor, I went to the restroom on the break. When I walked in, two jurors were talking. I didn't say anything to them. One said something along the lines of, I wish I could object. I proceeded into the stall and didn't hear the rest of the conversation. But it—it is possible they were discussing, if not the matter of the case, then definitely commenting on the lawyers and opinions there—thereof.

Defense counsel later stated:

> My fear would be that the one making that statement is trying to poison the rest of the panel. And it is talking about what's occurring in the courtroom. And the Court has admonished them not to do so.

Because of the foregoing, and because defense counsel believed that the particular juror "is ready to kill [him]" and had been "staring [him] down," defense counsel requested to question the juror. The trial judge refused to allow questioning of the juror and instead issued further detailed admonishments and warnings to the jury and instructed his bailiff to "monitor the situation very carefully." McDaniel did not request a mistrial or file a motion for new trial with affidavits alleging juror misconduct.

Because he failed to move for a mistrial or file a motion for new trial raising the issue of juror misconduct with accompanying affidavits, McDaniel did not preserve this issue for appellate review. *See Castillo v. State*, 319 S.W.3d 966, 970 (Tex. App.—Austin 2010, pet. ref'd) ("To preserve error caused by juror misconduct, the defendant must either move for a mistrial or file a motion for new trial supported by affidavits of a juror or other person in a position to know the facts alleging misconduct."); *see McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985).

Nevertheless, even if this issue had been preserved, nothing in this record indicates that the trial judge abused his discretion by refusing to question the complained-of juror. *See Granados*, 85 S.W.3d at 236; *see also Anderson*, 633 S.W.2d at 853-54. Indeed, the *Ocon* Court mentioned that questioning a juror for juror misconduct is

not required.  *See* 284 S.W.3d at 886-87.  Furthermore, by itself, nothing in the brief statement presented to the trial judge—"I wish I could object"—necessarily indicated a bias on the part of the juror.  To hold otherwise would require inappropriate speculation on our part.  The filing of a motion for new trial with affidavits from other jurors could have provided the necessary context for the comments.  McDaniel chose not to do this.  Therefore, for the foregoing reasons, we overrule McDaniel's fourth issue.  *See Granados*, 85 S.W.3d at 236; *see also Anderson*, 633 S.W.2d at 853-54.

### IV.    OPINION TESTIMONY AND WITNESS BOLSTERING

In his fifth issue, McDaniel alleges that the State offered improper opinion testimony from Sergeant Timothy Scott of the Midlothian Police Department regarding whether the child victim showed signs of being coached.  Specifically, McDaniel complains that Sergeant Scott's testimony constituted improper witness bolstering and that Sergeant Scott's testimony on coaching was inadmissible because he had not been qualified as an expert witness on coaching.

A review of Sergeant Scott's testimony shows that defense counsel first raised the possibility that the child victim was coached "or maybe somebody had coached her."  Later, during re-direct, the State asked:  "Now, all this, did it appear as though [the child victim] had been coached to say these things?"  Sergeant Scott answered, "No."  Defense counsel then objected on the ground of speculation.

To preserve error for appellate review, a complaining party must make a timely and specific objection. *See* TEX. R. APP. P. 33.1(a)(1); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Texas courts have held that points of error on appeal must correspond or comport with objections and arguments made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998); *see Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Wright*, 154 S.W.3d at 241; *see Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (holding that an issue was not preserved for appellate review because appellant's trial objection did not comport with the issue he raised on appeal). Because McDaniel's bolstering and expert-witness complaints in this issue do not comport with his speculation objection made in the trial court, we cannot say that he has preserved this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); *see also Resendiz*, 112 S.W.3d at 547; *Dixon*, 2 S.W.3d at 273; *Wright*, 154 S.W.3d at 241.

And even if this complaint was preserved, it lacks merit because McDaniel had already opened the door to the child victim possibly being coached through the questioning of Sergeant Scott. *See Kipp v. State*, 876 S.W.2d 330, 335-36 (Tex. Crim. App. 1994) (concluding that, if the defendant introduces evidence regarding whether a child has been coached into making allegations, the State may respond with evidence that the child was not coached). Accordingly, we overrule McDaniel's fifth issue.

## V.    THE ADMISSION OF EXPERT TESTIMONY

In his sixth issue, McDaniel argues that the State offered improper testimony from Evans and Angela Marquart, the child victim's therapist at the Children's Advocacy Center, regarding the phases of abuse and outcry, reporting dynamics, and behavioral characteristics of sexual-abuse victims.  Specifically, McDaniel asserts that the improper testimony from Evans and Marquart "allowed the witnesses to report what the complainant said out-of-court and give their speculative conclusions about its reliability."

The record reflects that McDaniel did not object to any of Evans's testimony pertaining to the phases of abuse and outcry, reporting dynamics, and behavioral characteristics of sexual-abuse victims.   And though McDaniel objected to whether Marquart was properly qualified as an expert, he did not object to the substance of her testimony.

As stated earlier, to preserve error for appellate review, a complaining party must make a timely and specific objection.  *See* TEX. R. APP. P. 33.1(a)(1); *see also Wilson*, 71 S.W.3d at 349.  Regarding McDaniel's complaints about Evans's testimony, McDaniel's failure to object to the above-referenced subject matter preserves nothing for appellate review as to Evans.  *See* TEX. R. APP. P. 33.1(a)(1); *see also Wilson*, 71 S.W.3d at 349.  Furthermore, McDaniel's complaints on appeal regarding Marquart's testimony do not comport with the objection made at trial and, thus, present nothing for appellate review.

*See* TEX. R. APP. P. 33.1(a)(1); *see also Resendiz*, 112 S.W.3d at 547; *Dixon*, 2 S.W.3d at 273; *Wright*, 154 S.W.3d at 241.

And even if McDaniel had preserved this complaint, we note that McDaniel opened the door to Evans's testimony when he questioned Evans about coaching. This allowed the State to follow up on that subject. With respect to Marquart's testimony, she never touched on whether the child victim was telling the truth; she only opined on the characteristics of child sexual abuse victims and the abuse process. We therefore overrule McDaniel's sixth issue.

## VI.    ADMISSION OF THE SANE ("SEXUAL ASSAULT NURSE EXAMINER") RECORDS

In his seventh issue, McDaniel asserts that State's Exhibit 25, the child victim's medical records from her SANE examination, were improperly admitted because they were not records for medical diagnosis and treatment. We disagree.

The medical-diagnosis exception to the hearsay rule is outlined in Texas Rule of Evidence 803(4) and provides the following:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . .
>
> (4) Statement made for Medical Diagnosis or Treatment.
>
> A statement that:
>
>> (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and

> (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

TEX. R. EVID. 803(4).

Teresa Fugate, a nurse at Cook Children's Medical Center, testified that the purpose of the SANE exam is to "diagnose and treat, to make sure that they're okay as far as anything they may have been exposed to based on the type of contact that's happened." Nurse Fugate recounted that she performed a medical exam on the child victim on January 6, 2015, and that she explained the process to the child victim "to make sure they're physically and mentally okay." Nurse Fugate later affirmed that the child victim was "made aware that she [was] here for the purpose of medical diagnosis and treatment . . . ." Additionally, the record reflects that Nurse Fugate did a physical examination of the child victim for injuries, tested for gonorrhea and chlamydia, and referred the child victim for additional treatment, including counseling through the Gingerbread House and additional testing for sexually-transmitted diseases, such as HIV and syphilis.

Based on the foregoing testimony, the trial court did not abuse its discretion by finding that the medical records from the child victim's SANE exam were for medical diagnosis and treatment and, thus, satisfied the Rule 803(4) hearsay exception. *See* TEX. R. EVID. 803(4); *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd) ("The object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed. Thus, statements

describing acts of sexual abuse are pertinent to the victim's medical diagnosis and treatment."); *Fleming v. State*, 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, pet. ref'd) ("We conclude that the child's statements to [a pediatrician and a mental health therapist] describing the abusive acts and identifying the abuser were reasonably pertinent to medical diagnosis and treatment, and were properly admitted pursuant to Rule 803(4)."); *see also Martinez*, 327 S.W.3d at 736.

And even if it was error to admit the medical records from the child victim's SANE exam, the substance of the records was admitted elsewhere through the child victim's testimony without objection. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (holding that any error in the admission of evidence is cured when the same evidence is admitted elsewhere without objection); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (same). Accordingly, we overrule McDaniel's seventh issue.

## VII. SUFFICIENCY OF THE EVIDENCE

In his first issue, McDaniel contends that the evidence supporting his convictions in Counts 2 and 4 is insufficient. We disagree.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires

the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

As noted above, McDaniel was convicted of four counts of aggravated sexual abuse of a child; however, on appeal, he only challenges the sufficiency of the evidence as to Counts 2 and 4. In Count 2, McDaniel was charged with intentionally or knowingly causing his sexual organ to contact or penetrate the anus of the child victim, who was then and there younger than six years of age. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iv). In Count 4, McDaniel was charged with intentionally or knowingly causing his mouth to contact or penetrate the anus of the child victim, who was then and there younger than six years of age. *See id.* § 22.021(a)(1)(B)(i), (iv).

The child victim, who was nine years old at the time of trial, testified that McDaniel put his penis on her "butt," which she described as the area she uses to go "number two" in the bathroom, and "peeing inside her butt." The child victim also noted that McDaniel used his lips to tongue and kiss her butt. The record reflects that the child victim used a tissue box to demonstrate how McDaniel touched her butt with his penis and mouth.

The two outcry witnesses—Amanda and Evans—supported the child victim's testimony. Specifically, Amanda recounted that the child victim stated that McDaniel "put his wee-wee in my butt and peed on my back." Later, the child victim told Evans that McDaniel kissed her butt and stuck his tongue in it on two separate occasions.

Despite the foregoing, McDaniel argues on appeal that the evidence cannot be sufficient because the child victim's testimony was "confusing" and inconsistent, and because there was no physical evidence. These arguments are merely attacks on the jury's

determination of the weight and credibility of the evidence.  The jury resolves conflicts in the evidence and decides what weight to assign each piece of evidence.  *Jackson*, 443 U.S. at 319; *Cary*, 507 S.W.3d at 757; *Brooks*, 323 S.W.3d at 899; *Hooper*, 214 S.W.3d at 16-17.  And we are to defer to the jury's resolution of such conflicts in the evidence.  *See Merritt*, 368 S.W.3d at 525.

Additionally, a child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault of a child.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2019); *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *see also Cantu v. State*, 366 S.W.3d 771, 775 (Tex. App.—Amarillo 2012, no pet.).  Moreover,

> [t]he courts will give wide latitude to testimony given by child victims of sexual abuse.  The victim's description of what happened need not be precise, and the child is not expected to communicate with the same level of sophistication as an adult.  Corroboration of the victim's testimony by medical or physical evidence is not required.

*Cantu*, 366 S.W.3d at 776 (internal citations omitted).  We therefore reject these complaints.

McDaniel also argues that the evidence did not establish that he penetrated the child victim's anus, as opposed to merely her buttocks.  Though she did not identify her anus specifically, the child victim did describe her "butt" or "bottom" as the place where she went "number two" in the bathroom and that McDaniel "peed inside her butt."  She also identified her "butt" on anatomical drawings.  Amanda noted that the child victim

stated that McDaniel "put his wee-wee in my butt and peed on my back." Because the child victim is not expected to testify with the same degree of precision as an adult, and because the jury could have inferred that the child victim was referring to her anus when she spoke about her "butt" or "bottom," the foregoing evidence is sufficient to show penetration of the child victim's anus by McDaniel's sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iv); *Saldana v. State*, 287 S.W.3d 43, 61 (Tex. App.—Corpus Christi 2008, pet. ref'd) ("We have previously held that evidence showing penetration of the complainant's 'butt' was legally sufficient to sustain a conviction for penetration of the 'anus.'"); *Mallet v. State*, 9 S.W.3d 856, 864 (Tex. App.—Fort Worth 2000, no pet.) ("[T]he jury could reasonably infer that K.A.'s reference to 'butt' or 'backside where she goes to the bathroom' was a reference to her anus."); *see also Martinez v. State*, Nos. 14-03-00596-CR & 14-03-00597-CR, 2004 Tex. App. LEXIS 4949, at *4 (Tex. App.—Houston [14th Dist.] May 25, 2004, pet. ref'd) (mem. op.) ("The jury could have rationally concluded that 'in my butt' indicated penetration of the anus.").

Finally, McDaniel complains that the evidence only demonstrated that he penetrated the child victim's anus with his tongue, rather than his mouth. Given that other courts have rejected McDaniel's argument, and because the child victim testified that McDaniel's tongue went inside her butt, the jury was entitled to conclude that McDaniel used his mouth to contact or penetrate the anus of the child victim, as alleged in Count 4. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iv); *Montoya v. State*, 841

S.W.2d 419, 422 (Tex. App.—Dallas 1992), *rev'd on other grounds*, 906 S.W.2d 528 (Tex. Crim. App. 1995) ("If we limit mouth to the cavity containing the tongue, gum, and teeth, then we defeat the intent of the statute because a cavity cannot make contact with another object or person as required under the statute. Common sense and common usage leads us to conclude that the legislature intended the word 'mouth' to include its parts, such as the teeth and tongue."); *Johnson v. State*, 882 S.W.2d 39, 41 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *see also Smith v. State*, No. 08-03-00384-CR, 2005 Tex. App. LEXIS 4203, at *27 (Tex. App.—El Paso 2005, pet. ref'd) (mem. op., not designated for publication) ("[C]ommon sense requires that the word 'mouth' as used in Section 22.01(a)(1)(B)(iii) must be read to include its parts such as the tongue.").

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have concluded that McDaniel committed the offense of aggravated sexual assault of a child, as alleged in Counts 2 and 4. *See id.*; *see also Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732-33; Villa, 514 S.W.3d at 232. As such, we conclude that McDaniel's convictions in Counts 2 and 4 are supported by sufficient evidence. *See id.*; *see also Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732-33; Villa, 514 S.W.3d at 232. We overrule McDaniel's first issue.

## VIII. STACKING MCDANIEL'S SENTENCES

In his eighth and ninth issues, McDaniel complains that the trial court improperly stacked his sentences and that the stacking of the sentences amounted to cruel and unusual punishment and infringed on the jury's authority.

We review a trial court's decision to cumulate sentences for an abuse of discretion. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West 2018). The trial judge has absolute discretion to cumulate sentences if the law authorizes the imposition of cumulative sentences. *Byrd v. State*, 499 S.W.3d 443, 446 (Tex. Crim. App. 2016). A trial court abuses its discretion if it imposes consecutive sentences where the law requires concurrent sentences. *Id.* at 446-47.

Pursuant to section 3.03 of the Penal Code:

(b) If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of:

. . .

(2) an offense:

(A) under Section 33.021 or an offense under Section 21.02, 21.11, 22.021, 25.02, or 43.25 committed against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of more than one section . . . .

TEX. PENAL CODE ANN. § 3.03(b)(2)(A) (West Supp. 2019).

In the instant case, McDaniel was convicted of four counts of aggravated assault of a child under section 22.021 of the Penal Code. *See id.* § 22.021. These operate as four separate convictions—all of which were subject to cumulation under section 3.03(b)(2)(A) of the Penal Code.[1] *See id.* § 3.03(b)(2)(A).

Despite the foregoing, McDaniel complains that the sentences could not be cumulated under section 3.03 because the convictions were not part of the same criminal episode. We are not persuaded by this argument because the convictions were for the repeated commission of a similar criminal offense. *See id.* § 3.01(2) (West 2011) (defining a "criminal episode" as "the commission of two or more offenses" where "the offenses are the repeated commission of the same or similar offenses.").

McDaniel further argues that the stacking of his sentences constituted cruel and unusual punishment. However, McDaniel did not object to the stacking of his sentences on the ground of cruel and unusual punishment. Rather, he focused his objection to the stacked sentences on the applicability of article 42.08 of the Code of Criminal Procedure and that the trial court invaded the province of the jury. Because McDaniel did not object in the trial court to his stacked sentences as tantamount to cruel and unusual punishment,

---

[1] Among McDaniel's arguments in these issues is that Counts 1 and 3 could not be stacked because they alleged alternative means of committing the same offense. Count 1 alleged that McDaniel penetrated the child victim's sexual organ with his finger. In Count 3, the State alleged that McDaniel contacted or penetrated the child victim's sexual organ with his mouth. Contrary to McDaniel's assertion, each of these are separate and distinct statutory offenses, rather than merely alternate means for committing the same offense. *See Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999). And because Counts 1 and 3 are separate and distinct offenses, they were subject to stacking.

we conclude that this argument is not preserved. *See Ham v. State*, 355 S.W.3d 819, 825 (Tex. App.—Amarillo 2011, pet. ref'd) ("Constitutional rights, including the right to be free from cruel and unusual punishment, can be forfeited by a failure to raise a complaint on specific constitutional grounds in the trial court."); *see also Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding that a complaint of the constitutional right to be free from cruel and unusual punishment was forfeited when no objection on this basis was made in the trial court).

Next, McDaniel argues that the stacking of his sentences invaded his Sixth Amendment right to a jury trial and to be punished by a jury. McDaniel characterizes this argument as an *Apprendi* violation. *See generally Apprendi v. New Jersey*, 520 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

In *Apprendi*, the United States Supreme Court determined that "[o]ther than the fact of a prior conviction, any prior fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362-63. The Court of Criminal Appeals has stated that *Apprendi* and its progeny clearly deal with the upper-end extension of individual sentences, when that extension is contingent upon findings of fact that were never submitted to the jury. *Barrow v. State*, 207 S.W.3d 377, 379 (Tex. Crim. App. 2006). These decisions do not, however, speak to a trial court's authority to cumulate sentences when that authority is provided by statute and is not based upon discrete fact-finding,

but is wholly discretionary. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 42.08(a). In the instant case, the trial court imposed a valid sentence within the statutorily-prescribed range for each of McDaniel's four convictions. *See Barrow*, 207 S.W.3d at 379. Accordingly, we cannot say that the trial court's cumulation order violated *Apprendi*.[2] *See id.* We overrule McDaniel's eighth and ninth issues.

### IX. LIMITING THE TESTIMONY OF MCDANIEL'S EXPERT WITNESS

In his tenth issue, McDaniel argues that the trial court improperly limited his expert's testimony regarding the possibility that the child victim's allegations were based on a dream.

We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *See Ellison v. State*, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

The Texas Rules of Evidence set out three separate conditions regarding the admissibility of expert testimony. First, Rule 104(a) requires a trial judge to determine "[p]reliminary questions concerning the qualification of a person to be a witness." TEX.

---

[2] As a corollary to his *Apprendi* argument, McDaniel directs us to the recent United States Supreme Court decision in *United States v. Haymond*, where the Court held that a mandatory consecutive sentencing scheme is unconstitutional. 139 S. Ct. 2369, 2378, 204 L. Ed. 897 (June 26, 2019). However, the *Haymond* decision centered on the fact that the defendant was only eligible for an additional sentence because the judge made a fact finding. *Id.* In contrast, as mentioned above, Texas's stacking scheme is purely discretionary and is not based on any fact finding by the trial judge. *See Barrow v. State*, 207 S.W.3d 377, 379-80 (Tex. Crim. App. 2006); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West 2018). As such, we do not find the *Haymond* decision to be applicable in this case.

R. EVID. 104(a).  Second, Rule 702 states:  "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."  *Id.* at R. 702.  Third, Rule 402 renders relevant evidence admissible.  *Id.* at R. 402.  Rule 401 defines "relevant evidence" as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  *Id.* at R. 401.

These rules require the trial judge to make the following inquires, prior to admitting expert testimony:  "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case."  *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006).  These inquiries are commonly referred to as qualification, reliability, and relevance, respectively.  *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006).

The proponent of scientific evidence bears the burden of demonstrating by clear and convincing evidence that the evidence is reliable.  *Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000).  "This is accomplished by showing:  (1) the validity of the underlying scientific theory; (2) the validity of the technique applying the theory; and (3)

proper application of the technique on the occasion in question." *Id.* (citing *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)).

In this case, the trial court conducted a hearing outside the presence of the jury and qualified McDaniel's expert, Dr. Aaron Pierce, on several subjects. However, McDaniel never qualified Dr. Pierce regarding dream interpretation, nor did he present evidence regarding the reliability of dream interpretation contributing to false allegations of sexual abuse. Because McDaniel offered no evidence on the qualifications of Dr. Pierce regarding dream interpretation, and because McDaniel also failed to proffer evidence establishing the reliability of this subject, we cannot say that the trial court abused its discretion by limiting Dr. Pierce's testimony on dream interpretation under Rule 702. *See* TEX. R. EVID. 702; *Rodgers*, 205 S.W.3d at 527; *see also Ellison*, 201 S.W.3d at 723. We overrule McDaniel's tenth issue.

## X.    CUMULATIVE ERROR

In his eleventh issue, McDaniel asserts that the cumulative effect of the aforementioned errors violated his due process rights under the Fourteenth Amendment of the United States Constitution.

An appellate court should consider the cumulative effect when there are multiple errors. *See Martin v. State*, 151 S.W.3d 236, 242 (Tex. App.—Texarkana 2004, pet. ref'd). It is possible that a number of errors may be harmful in their cumulative effect. *See Feldman v. State*, 71 S.W.3d 738, 757 (Tex. Crim. App. 2002); *Hughes v. State*, 24 S.W.3d 833, 844

(Tex. Crim. App. 2000); *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). However, non-errors cannot produce harm in their cumulative effect. *See Hughes*, 24 S.W.3d at 844; *Chamberlain*, 998 S.W.2d at 238; *see also Stooksbury v. State*, No. 10-08-00174-CR, 2009 Tex. App. LEXIS 7128, at *14 (Tex. App.—Waco Sept. 9, 2009, pet. ref'd) (mem. op., not designated for publication). We have not found error; therefore, we cannot say that there is cumulative error. *See Hughes*, 24 S.W.3d at 844; *see also Stooksbury*, 2009 Tex. App. LEXIS 7128, at *14. Accordingly, we overrule McDaniel's eleventh issue.

## XI.   CONCLUSION

Having overruled all of McDaniel's issues on appeal, we affirm the judgment of the trial court.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
*(Chief Justice Gray concurring with a note)
Affirmed
Opinion delivered and filed March 23, 2020
Do not publish
[CRPM]

*(Chief Justice Gray concurs in the Court's judgment. A separate opinion will not issue.)

